**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**CLYDE R. LONG**                                                                                          **PLAINTIFF**

V.                                      No. 5:09CV00015 SWW-BD

**STEPHEN BROUGHTON,** *et al.*                                                              **DEFENDANTS**

**RECOMMENDED DISPOSITION**

I.   **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the recommendation.  A copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

II.     **Background:**

Plaintiff, formerly an inmate at the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"), filed a Complaint pro se under 42 U.S.C. § 1983 (docket entry #1). Plaintiff now has filed both an Amended Complaint (#26) and a Second Amended Complaint (#94).

Plaintiff alleges that Defendants acted with deliberate indifference to his medical needs by failing to monitor his lithium level, resulting in lithium toxic poisoning, and by failing to diagnose and treat his dislocated hip following hip replacement surgery in 2007. Plaintiff names as Defendants employees of Correctional Medical Services ("CMS"), as well as various ADC officials.

The only remaining claim in this case is that Defendants Stephen Broughton and Deborah York acted with deliberate indifference to Plaintiff's medical needs by failing to monitor his lithium level. Defendants Broughton and York now have filed a motion for summary judgment. (#259) In the motion, these Defendants argue that Plaintiff's claim against Defendant York fails as a matter of law because Plaintiff failed to exhaust this claim as required by the Prison Litigation Reform Act ("PLRA") and that Plaintiff's claim against Defendant Broughton fails as a matter of law.

Although Plaintiff was granted additional time to respond to the motion for summary judgment (#265 and #270), he has not responded to the motion, and the time to do so has passed.

Based upon the evidence presented, the Defendants' motion for summary judgment (#259) should be GRANTED.  Plaintiff's claim against Defendant York should be dismissed without prejudice.  Plaintiff's claim against Defendant Broughton should be dismissed with prejudice.

III.   **Discussion**:

   A.   Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).  If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  See *Celotex,* 477 U.S. at 322.  "Although it is to be construed liberally, a *pro se* complaint must

contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

B.   Exhaustion - Defendant York

In the motion for summary judgment, Defendant York argues that Plaintiff has not exhausted his administrative remedies against her as required by the PLRA. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained").

Congress enacted the PLRA to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 424, 122 S.Ct. 983 (2002). The purposes of the exhaustion requirement include, "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S.199, 127 S.Ct. 910, 923 (2007); see also *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385 (2006).

In *Jones*, the Supreme Court clarified that "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and

claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 127 S.Ct. at 923.

Here, the unrebutted evidence shows that Plaintiff fully exhausted only one grievance relating to the lithium toxicity, DU-07-00048.[1]  (#228-5)  In that grievance, Plaintiff complains that Defendant Broughton was negligent in permitting Plaintiff's lithium levels to rise too high.  (#1 at p.9)  Defendant York is not mentioned in Plaintiff's grievance.  (#1 at p.9)

Plaintiff has failed to come forward with any evidence to show either that he did fully exhaust his administrative remedies against Defendant York or that he was prevented from exhausting his claim against her in a timely manner.  Because Plaintiff has failed to create a genuine dispute of fact on this issue, Defendant York is entitled to judgment as a matter of a law.

    C.    Deliberate Indifference - Defendant Broughton

Prison officials or their agents violate the Eighth Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285 (1976).  The Eighth Circuit Court of Appeals has interpreted this standard as including both an

---

[1] Although Defendants did not include Charlotte Gardner's affidavit or Plaintiff's grievances in their motion, Ms. Gardner's affidavit was previously submitted to the Court in support of another motion for summary judgment.  (#228)  Plaintiff included this grievance in his original complaint.  (#1 at p.9)

objective and a subjective component: A plaintiff must show: (1) that he had objectively serious medical needs; and (2) that prison officials actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (citing *Estelle*, 429 U.S. at 104-05).

  The undisputed evidence in this case reveals that when Plaintiff completed a health history on November 4, 2006, he indicated that he was taking 1200 mg of lithium daily. (#261-1 at p.4)  When Defendant Broughton examined Plaintiff two days later, Plaintiff told Defendant Broughton that he had been taking lithium for nearly three months, but that it "had not really done a whole lot."  (#261-1 at p.5)  Plaintiff stated that he was taking 300 mg of lithium at noon and 600 mg of lithium at bedtime.  (#261-1 at p.5) Defendant Broughton decided to increase Plaintiff's lithium dosages to 600 mg at noon and 600 mg at bedtime, and ordered that Plaintiff's lithium level be checked in two weeks.  (#261-1 at pp.6-7)  Blood work was performed on November 21, 2006. Plaintiff's lithium level was 0.9, which was within the therapeutic range.  (#261-1 at p.10)

Defendant Broughton saw Plaintiff on December 19, 2006 and again on January 23, 2007. (#261-1 at pp.11-12)  At both appointments, Defendant Broughton continued to prescribe Plaintiff 600 mg of lithium at noon and 600 mg of lithium at bedtime daily. (#261-1 at pp.11-12)

When Defendant Broughton saw Plaintiff on March 13, 2007, he decided to increase Plaintiff's lithium dosage to 600 mg at noon and 900 mg at bedtime. (#261-1 at p.13)  Defendant Broughton ordered that lab testes be taken on March 21, 2007. (#261-1 at p.13)  At that time, Plaintiff's lithium level, again, was in the therapeutic range. (#261-1 at p.17)

On April 29, 2007, Plaintiff went to the infirmary complaining of dizziness. (#261-1 at p.18)  Plaintiff's medical records indicated that he had "closed-mouth mumbled speech." (#261-1 at p.18)  On the same day, his medications were reviewed by an APN who instructed that Plaintiff's lithium be held and that his lithium levels be checked. (#261-1 at p.18)  Apparently, Plaintiff's lithium levels were not checked on that date.

The following day, Plaintiff was seen by his mental health counselor.  His counselor noted that Plaintiff was shaking noticeably, lethargic, and unable to control diarrhea. (#261-1 at p.20)  His counselor further noted that as the session continued, Plaintiff became progressively paranoid. (#261-1 at p.21)  Plaintiff's counselor then

contacted Defendant Broughton who instructed that Plaintiff's lithium be stopped and that he receive 5 mg of Haldol. (#261-1 at p.21)

On May 1, 2007, Plaintiff's blood results indicated "panic value result[s]" for lithium. (#261-1 at p.24) Medical records show that Plaintiff's lithium level was 3.7, over three times higher than the therapeutic range. (#261-1 at p.24) As a result, Plaintiff was diagnosed with lithium toxicity and was admitted to the Diagnostic Hospital on that date. (#261-1 at p.26)

On May 2, 2007, Plaintiff was transported to the Jefferson Regional Medical Center. (#261-1 at p.30) He was discharged from the Jefferson Regional Medical Center on May 7, 2007, after his lithium level was stabilized. (#261-1 at p.31)

Although Plaintiff claims that Defendant Broughton failed to properly monitor his lithium levels, which resulted in lithium toxicity, the evidence does not support this conclusion. The undisputed evidence shows that Plaintiff was consistently administered lithium for four months before any problems arose. Even after Defendant Broughton increased Plaintiff's lithium dosage, he did not complain of negative side effects until nearly six weeks after the increased dosage began.

Although it is undisputed that Plaintiff experienced lithium toxicity, the Court cannot conclude that Defendant Broughton was the cause. Based on the affidavits supporting the motion, the cause of the toxicity was an overdose. (#261-3 at p.5 and #261-4 at p.5) Plaintiff, however, does not claim, and has not provided any evidence, that

Defendant Broughton intentionally ordered a dangerously high dosage of lithium during the days immediately preceding Plaintiff's hospitalization. Thus, Defendant Broughton is entitled to judgment as a matter of law.

**IV.    Conclusion:**

The Court recommends that the motion for summary judgment (#259) filed by Defendants Broughton and York be GRANTED. Plaintiff's claims against Defendant York should be dismissed without prejudice. Plaintiff's claims against Defendant Broughton should be dismissed with prejudice.

DATED this 2nd day of November, 2010.

_____
UNITED STATES MAGISTRATE JUDGE